IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the matter of the Adoption of | No. 81769-8-I |
| M.T.J., | DIVISION ONE |
| A minor child. | UNPUBLISHED OPINION |

CHUN, J. — M.T.J.'s father had contact with M.T.J. at the start of his life. But since 2016, the father has had nearly no contact with the child despite a parenting plan providing for visitation and communication. M.T.J.'s mother obtained a protection order against M.T.J.'s father, but the order allowed him to visit M.T.J. and did not prohibit him from contacting the child. M.T.J.'s mother and his half-brother petitioned for termination of the father's parental rights. The trial court ordered termination. For the reasons discussed below, we affirm.

I. BACKGROUND

M.T.J. lives with his mother in Washington State. After M.T.J. was born, his father moved from California to the mother's residence.

In July 2013, M.T.J.'s mother asked the father to move out. She later petitioned for a protection order against the father based on domestic violence allegations. The court dismissed her petition, and she petitioned again.

Sometime after the father moved out, he brought a parentage action in Snohomish County Superior Court. The court granted a temporary order on

Citations and pin cites are based on the Westlaw online version of the cited material.

January 7, 2014, giving the father visitation rights every Tuesday and Thursday from 4–6 p.m. and every Saturday from 12–5 p.m.

Then, in the domestic violence matter, the court issued a protection order against the father on January 15, 2014.  The order protected the mother and one of her other sons but allowed the father to keep visiting M.T.J. under the temporary parenting order and subsequent parenting plans.

Later, in the parentage action, the court issued an agreed order on September 23, 2014, granting the father visitation every other weekend from Saturday at 9 a.m. to Sunday at 12 p.m. and every Tuesday evening from 4 p.m. to 7 p.m.  The parties then agreed to, and the court entered, a final parenting plan (the Parenting Plan) on December 1, 2014, which altered the weekend visits to start on Fridays at 6 p.m.  The Parenting Plan also provided that the parents were to communicate by e-mail and notify each other at least 48 hours in advance if unable to comply with the regular schedule.  An order entered on June 2015 adjusted the Parenting Plan and provided the e-mail addresses for the parents to use.  The e-mail addresses in the order remain the current e-mail addresses for the parties.  The mother's home address has also remained the same.

The court in the domestic violation action renewed the protection order three times.  All the renewed protection orders allowed visitation to occur under the Parenting Plan and two orders authorized e-mails between the parents to discuss the Parenting Plan and the father's visitation with M.T.J.  On February 8, 2018, the mother petitioned to renew the order a fourth time, but the court

declined to do so, finding that there had been no new incidents to justify its renewal.

In December 2018, M.T.J.'s half-brother initiated a new matter and petitioned to adopt M.T.J. And in January 2019, he petitioned to terminate the father's parental rights. The mother consented to the adoption. The matter proceeded to trial.

At trial, the mother testified that during the first month and half following the entry of the January 2014 temporary parenting order, the father visited M.T.J. consistently. But she said that his visits became sporadic. She testified that he became homeless during this time. The father's last visit with M.T.J. occurred in March 2016. Afterward, no other visitations occurred; though, until July 2016, the father continued to e-mail the mother about cancelling visitations. Except for one postcard he sent in April 2020, the father had no contact with M.T.J. since March 2016. The father continued to reside in Washington until at least October 2016 before moving back to California. In June 2019, the father presented at a seminar in Bellevue, Washington, but did not try to contact M.T.J. while he was in the state. Though he made some child support payments, as of early 2020, the father owed almost $26,000 in child support despite receiving benefits from California and earning income in the few years preceding trial. The father never moved to modify his child support obligation, despite his claimed worsened financial circumstances.

The father testified at trial that after he left the mother's home in July 2013, she falsely accused him of domestic violence, harassed him, drove him into

poverty, and alienated him from M.T.J. The father said he receives "tremendous . . . pushback" from the mother when he tries to connect with M.T.J. The father testified that before March 2016, he had a "consistently wonderful" relationship with M.T.J. He said he bought M.T.J. toys, taught him to ride a bike, went on various outings, cooked him meals, and introduced M.T.J to his Buddhist community. The father also expressed concern that if the court terminated his parental rights, M.T.J. would not be exposed to his African American heritage, which would have negative psychological effects on him. The father testified that in February 2018, he sought to have an attorney move to modify the Parenting Plan so M.T.J. could visit him in California. The father also called witnesses who testified that they had observed him care for M.T.J. before March 2016.

The trial court found "by clear, cogent, and convincing evidence that [the father] has failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations." The court also found that it was in "the best interest of [M.T.J.] that the parental rights of his birth father . . . be terminated." Based on these findings, the court ordered termination of the father's parental rights. The father appeals.

I. ANALYSIS

RCW 26.33.120 provides that a trial court may terminate a parent-child relationship upon a showing by

> clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for [their] parental obligations and is

4

withholding consent to adoption contrary to the best interest of the child.

Under this standard, "the ultimate fact in issue is shown by evidence to be 'highly probable.'" In re Dependency of K.D.S., 176 Wn.2d 644, 653, 294 P.3d 695 (2013) (quoting In re Dependency of K.R., 128 Wn.2d 129, 141, 94 P.2d 831 (1973)). We review whether substantial evidence supports the trial court's findings of fact. In re Parental Rights to K.M.M., 186 Wn.2d 466, 477, 379 P.3d 75 (2016). "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." State v. Saint-Louis, 188 Wn. App. 905, 914, 355 P.3d 345 (2015), aff'd sub nom. In re Dependency of D.L.B., 186 Wn.2d 103, 376 P.3d 1099 (2016) (quoting In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009)). We do "not weigh the evidence or the credibility of witnesses." Id. "Because of the highly fact-specific nature of termination proceedings, deference to the trial court is 'particularly important.'" K.M.M., 186 Wn.2d at 477 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

RCW 26.33.120 requires a two-part showing for termination: (1) that the parent failed to perform their parental duties under circumstances showing a substantial lack of regard for their parental obligations, and (2) that termination is in the best interest of the child. Courts must resolve the first issue before addressing the second. In re Adoption of K.M.T., 195 Wn. App. 548, 558, 381 P.3d 1210 (2016).

A. Failure to perform parental duties under circumstances showing a substantial lack of regard for parental obligations

The father says the trial court erred in finding facts supporting termination of his parental rights. The mother and M.T.J.'s half-brother counter that the father fails to assign error to challenged findings of fact. We reach the merits of the father's appeal and conclude that substantial evidence supports the trial court's finding that he failed to perform parental duties under circumstances showing a substantial lack of regard for parental obligations.

1. Assignment of error

The father assigns error to the trial court "finding facts that supported an order that terminated [his] parental rights over M.T.J." But as the mother and M.T.J.'s half-brother note, he fails to assign error to specific findings of fact as required by RAP 10.3(g). And the rule provides, "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number" and we "will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g).

The father responds that his argument is "that the trial court's findings of fact do not support its determination to terminate his parental rights over M.T.J., meaning there is not substantial evidence in the record to support such a determination." The father conflates two separate inquiries. See Saint-Louis, 188 Wn. App. at 914 ("Where the trial court has weighed the evidence, our review is limited to determining whether the court's findings of fact are supported

6

by substantial evidence and whether those findings support the court's conclusions of law.").

Because he focuses on whether substantial evidence supports the trial court's determination and because his argument is fact-based, it appears the father is challenging the trial court's findings of fact. The following is the only finding of fact that he appears to challenge: "The testimony at trial demonstrated by clear, cogent, and convincing evidence that [the father] has failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations." We thus review that finding for substantial evidence. See State v. Kinneman, 120 Wn. App. 327, 342, 84 P.3d 882 (2003) ("'[i]n a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief . . . , there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue.'" (first alteration in original) (quoting State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995))); RAP 1.2(a) ("These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits.").

We treat the remaining, unchallenged findings of fact as verities on appeal. See State v. Moore, 161 Wn.2d 880, 884, 169 P.3d 469 (2007) ("Moore does not challenge the trial court's findings of fact. We therefore view these findings as verities.").

2. Substantial evidence supports the trial court's finding

The father says the trial court erred in finding facts supporting termination of his parental rights. The mother and M.T.J.'s half-brother respond that

7

unchallenged and undisputed findings of fact support the trial court's decision to terminate the father's parental rights. We conclude that substantial evidence supports the court's finding that clear, cogent, and convincing evidence showed that the father failed to perform his parental duties under circumstances showing a substantial disregard for his parental obligations.

As mentioned above, termination under RCW 26.33.120 requires a showing by

> clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for [their] parental obligations and is withholding consent to adoption contrary to the best interest of the child.

A parent's obligations involve the following minimum attributes

> "(1) [E]xpress love and affection for the child; (2) express personal concern over the health, education, and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance."

In re Interest of Skinner, 97 Wn. App. 108, 119, 982 P.2d 670 (1999) (quoting In re H.J.P., 114 Wn.2d 522, 531, 789 P.2d 96 (1990) (quoting In re Adoption of Lybbert, 75 Wn.2d 671, 674, 453 P.2d 650 (1969))). "A proper regard for parental obligations is reflected in behavior, not intentions." In re Adoption of McGee, 86 Wn. App. 471, 480, 937 P.2d 622 (1997).

a. Expressed love and affection[1]

The father says it cannot be disputed that he expressed love and affection for M.T.J. He emphasizes evidence showing that before March 2016, he played with M.T.J., bought him toys, took him on outings, and had a good relationship with him. But the father does not dispute that he had no contact with M.T.J.—aside from a postcard he sent in 2020 after litigation began—since March 2016. The record shows that the father essentially did not express love and affection for M.T.J. for at least four years. See In re Interest of J.L.M., No. 36656-1-III, slip op. at 10, (Wash. Ct. App. Aug. 29, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/366561_unp.pdf., review denied, 194 Wn.2d 1025, 456 P.3d 396 (2020) (upholding a termination order where the birth mother did not express love and affection to the child for five years).[2]

The father also points to his testimony that he would give his life for M.T.J. and that M.T.J. is the only thing that matters to him. But in assessing the failure to perform parental duties, we look at actions and not intentions. See McGee, 86 Wn. App. at 480.

Finally, the father contends he did not continue to have a relationship with M.T.J. because the mother actively alienated him through false allegations, by preventing M.T.J.'s paternal grandmother from seeing M.T.J., and by harassing

---

[1] We do not mean to suggest in our analysis that the father does not feel love or affection for M.T.J., or—pertinent to the next section of this opinion—does not have personal concern about his son's well-being. We note that the legal standards require us to examine what has been "expressed."

[2] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

him.  But first, none of the protection orders arising from the mother's allegations prevented the father from visiting or contacting M.T.J.  The December 2014 and 2016 orders explicitly authorized e-mails between the parents for purposes of the Parenting Plan.  Second, whether the mother did prevent M.T.J.'s paternal grandmother from seeing M.T.J. has no bearing on the father's expression of love and affection to M.T.J.  And third, the trial court did not appear convinced by the father's testimony that the mother's alleged harassment of him prevented him from expressing love and affection to M.T.J.  We do not assess credibility on appeal nor do we re-weigh the evidence.  See Saint-Louis, 188 Wn. App. at 914.

   b. Expressed personal concern about the health, education, and general well-being of the child

The father contends that he satisfied this requirement because he testified about his concern that M.T.J. would suffer if he was not exposed to his African American heritage.  But again, we assess a parent's actions rather than their intentions.  See McGee, 86 Wn. App. at 480.  The father also points to evidence in the record that he took M.T.J. on outings to the park, library, and zoo and says those outings were educational.  But these outings occurred before the father essentially disappeared from M.T.J.'s life in March 2016.

   c. The duty to supply the necessary food, clothing, and medical care

The father failed to supply necessary food, clothing, and medical care to M.T.J.  He says that despite not seeing his son since March 2016 and living in poverty, he did his best to support M.T.J. financially, and made some child support payments to the mother when possible.  The record shows that at the

time of trial, the father owed close to $26,000 in child support. The trial court found, and the father does not dispute, that since paying slightly less than $3,000 in 2016, he paid $54.26 in 2017, nothing in 2018, $525 in 2019, and $1000 in 2020 after this termination matter began. If, as the father contends, other payments were impossible, he could have moved to modify his child support obligation. But he never did so.

The father also points to evidence that he and M.T.J. made meals together and he regularly fed M.T.J. But no evidence exists, and the father does not allege, that he fed or cared for M.T.J. in such a manner since March 2016. The reality remains that for four years, the father did not feed, clothe, or care for his son or provide reliable financial support for those purposes.

### d. The duty to provide an adequate domicile

The father did not provide an adequate domicile for M.T.J. He does not dispute that he has not provided a home for M.T.J. since becoming homeless and moving to California. But the father contends that in February 2018, he contacted an attorney to help modify the Parenting Plan so that M.T.J. could visit him in California. But a visit to California, even if it had happened, does not equate to adequate domicile as the father does not specify where M.T.J. would stay during such a visit, nor does the father show how he helps provide M.T.J. with an adequate domicile when he is not visiting the father. And as discussed above, the father has failed to satisfy most of his child support obligations. Those obligations, if met, could have contributed to providing and maintaining an adequate home for M.T.J.

11

e. Duty to furnish social and religious guidance

The father says that he satisfied his duty to furnish social and religious guidance because he is concerned about M.T.J. not being exposed to his African American heritage. But again, "proper regard for parental obligations is reflected in behavior, not intentions." McGee, 86 Wn. App. at 480. The father also points to the fact that he introduced M.T.J. to his Buddhist community. But that occurred before March 2016. He does not allege that he acted to furnish social and religious guidance since March 2016.

The father cites the 36-year-old case of In re Interest of J.D., 42 Wn. App. 345, 711 P.2d 368 (1985).[3] There, Division Three of this court reversed the trial court's termination order because insufficient evidence supported a finding that the father failed to perform his parental obligations. Id. at 349. The court decided J.D. based on a since-repealed statute, former RCW 26.32.056 (1979), which required a showing that the parent "deserted or abandoned the child." Id. at 348. In J.D., the father lived in Alaska but he made "occasional telephone calls" and sent cards and gifts on birthdays and holidays. Id. at 346. He also regularly paid child support until he lost his job. Id. at 346–47.

J.D. is distinguishable because it rested on a repealed statute; RCW 26.33.120 does not require a showing of abandonment. Also, in J.D., though visitation was lacking because of distance, the father remained in contact

---

[3] The father also distinguishes the facts of Lybbert and McGee, contending that the trial court relied on those cases in its holding. But the trial court did not rely on a comparison of facts between this case and those cases to support its order; instead, the court cited those cases for the applicable standards. Thus, we need not address the father's contention that the facts of those cases are distinguishable.

12

with the children through phone calls and sent gifts and cards regularly. Here, the father does not dispute that after March 2016, he had no contact with M.T.J. for four years until he sent one postcard in April 2020, after the commencement of this litigation.

Substantial evidence supports the trial court's finding that clear, cogent, and convincing evidence shows that the father failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations.

B. Termination in Best Interest of the Child

The father contends that the trial court erred in reaching the inquiry of whether termination of his parental rights was in M.T.J.'s best interest. He says the court should not have reached this inquiry because clear, cogent, and convincing evidence did not support the court's determination that he *abandoned* his parental responsibilities.[4] The mother and M.T.J's half-brother counter that the father cites a repealed statute, and that the current applicable statute does not require proof of abandonment. And they contend that because overwhelming and undisputed evidence supports the trial court's determination that the father failed to perform his parental duties under circumstances showing a substantial disregard for his parental obligations, the court did not err by deciding whether termination was in M.T.J.'s best interest. We conclude that the court did not err by deciding whether termination was in M.T.J.'s best interest.

---

[4] The father incorrectly cites former RCW 26.32.056 (1979), the repealed predecessor to RCW 26.33.120, in his opening brief.

13

Courts must address whether a parent failed to perform parental duties under circumstances showing a substantial lack of regard for parental obligations before addressing whether termination is in the best interest of the child. See K.M.T., 195 Wn. App. at 558. Because we conclude that substantial evidence supports the court's finding that clear, cogent, and convincing evidence showed that the father failed to perform his parental duties under circumstances showing a substantial disregard for his parental obligations, the court did not err by proceeding to the inquiry of whether termination was in M.T.J.'s best interest.[5]

We affirm.

_Chun, J._

WE CONCUR:

_Verellen, J_          _Appelwick, J._

---

[5] The father also assigns error to the trial court "ordering that [M.T.J's half brother] met the statutory requirements to allow him to adopt M.T.J." But because he presents no argument for this assignment of error, we do not address it. See Prostov v. Dep't of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015) ("The failure of an appellant to provide argument and citation of authority in support of an assignment of error precludes appellate consideration of an alleged error.").